Hannah Connor (Florida Bar No. 125378)
Admitted *Pro Hac Vice*
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 2155
St. Petersburg, FL 33731
Phone: (202) 681-1676
Email: hconnor@biologicaldiversity.org

*Counsel for Plaintiff Center for Biological Diversity*
*Additional Counsel Listed in Signature Block*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity, | ) |
| | ) |
| Plaintiff, | ) Case No: 4:18-cv-00050-TUC-JAS |
| | ) |
| v. | ) **PLAINTIFF'S RESPONSE IN** |
| | ) **OPPOSITION TO DEFENDANTS'** |
| E. Scott Pruitt, in his official capacity as | ) **MOTION TO DISMISS FOR LACK** |
| Administrator of the U.S. Environmental | ) **OF JURISDICTION** |
| Protection Agency, *et al.*, | ) |
| | ) |
| Defendants. | ) |

On September 18, 2017, the U.S. Environmental Protection Agency (EPA or Agency) published a final rule delaying compliance with final and effective pollution discharge limitations established under the Clean Water Act, 33 U.S.C. § 1251 *et seq*., in 2015 for steam electric power generating facilities – a category that includes coal, oil, natural gas, and nuclear power plants. 82 Fed. Reg. 43,494 (Sept. 18, 2017). That action, largely the result of an administrative citizen petition filed by the Utility Water Act Group (UWAG) pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et*

*seq.*, does not approve or promulgate any effluent limitation or other limitation, and does not change or otherwise amend the effluent limitations and guidelines established by the Agency in 2015. 82 Fed. Reg. at 43,494-95. Instead, it disregards the objectives of the Clean Water Act and allows entities to continue discharging toxic pollutants into waterways by delaying compliance with already final and lawfully executed effluent limitations.

Plaintiff Center for Biological Diversity (Center) challenges the September 2017 delay rule (Delay Rule) under the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et seq.*, and National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, to enforce EPA's ongoing obligations under these laws, and to support Congress' fundamental commitment to protecting imperiled wildlife, vital aquatic habitat, and public health. EPA has now moved to dismiss the Center's case for lack of subject matter jurisdiction, relying on Section 509(b)(1)(E) of the Clean Water Act, 33 U.S.C. § 1369(b)(1)(E), as support for its motion (ECF 11). There is no merit to this argument.

Section 509(b)(1) of the Clean Water Act enumerates seven narrow categories of agency actions that a plaintiff must challenge directly in the court of appeals, rather than in district court. One of the categories is "[r]eview of the [EPA] Administrator's action . . . in approving or promulgating any effluent limitation or other limitation." 33 U.S.C. § 1369(b)(1)(E). As this category makes clear, for it to apply the Agency must expressly approve or promulgate an effluent limitation or other limitation, something that, by its own description, EPA has not done here. *See, e.g.,* 82 Fed. Reg. at 43,494-95 ("EPA's action [is] to postpone certain compliance dates in the 2015 Rule . . . and . . .

2

does not otherwise amend the effluent limitations guidelines and standards for the steam electric power generating point source category."); *id*. at 43,499 ("This rule . . . postpones certain requirements on steam electric power plants to control their pollutant discharges by two years, and as a result, it relieves a restriction on regulated entities for that period.") Indeed, EPA's act of delaying compliance deadlines with the 2015 effluent limitations yields the opposite result because it "*relieves* a restriction on regulated entities," *id*. at 43,499 (emphasis added), rather than *establishes "any restriction . . .* on quantities, rates, and concentrations" of pollutants from point sources into navigable waters. 33 U.S.C. § 1362(11) (definition of effluent limitation) (emphasis added).

As the Supreme Court and courts in the Ninth Circuit have repeatedly recognized, "[t]he specificity and precision of [Section 509], and the sense of it, persuade us that it is designated to exclude" EPA actions that Congress did not specify. *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992). As a result, courts should deny attempts by EPA to "broaden . . . [the] narrow language" of Section 509(b)(1). *Nat'l Ass'n of Mfrs. v. DOD,* 138 S. Ct. 617, 632 (2018). As Justice Sotomayor recently explained on behalf of a unanimous Supreme Court, "Courts are required to give effect to Congress' express inclusions and exclusions, not disregard them," *id*. at 631 (citation omitted), and any maneuvering on the part of the government to re-write statutory language or ignore the clear precedent of the Supreme Court and Ninth Circuit should be rejected.

No other statutory provisions or other legal precedents support EPA's attempts to jurisdictionally bind this delay action to the agency's 2015 rulemaking to evade review by this Court. Rather, under the Clean Water Act, the mechanism for EPA to respond to

an administrative citizen petition to "reconsider" a rulemaking already in effect is through a new rulemaking. *See* 33 U.S.C. § 1311(d); *id*. § 1314(b); 5 U.S.C. § 553. In the meantime, the Act is clear that "compliance with effluent limitations," such as those promulgated in 2015, must be achieved "as expeditiously as practicable but in no case later than three years after the date such limitations are promulgated." 33 U.S.C. § 1311(b)(2).

Despite the illusion of complexity and distorted logic that EPA relies upon in its motion to dismiss, this motion presents the Court with a relatively straight-forward question of jurisdiction. In short, because the September 2017 Delay Rule is a distinct final agency action that falls outside of the narrow list of actions over which the Clean Water Act provides the court of appeals exclusive jurisdiction, jurisdiction is proper in the district court, and the Court should DENY Federal Defendants' Motion to Dismiss.

**FACTUAL BACKGROUND**

In 2015, EPA published a final rule updating effluent limitation guidelines and standards for the power plant industry, and setting the first federal limits on the levels of toxic metals in wastewater that can be discharged from power plants. 80 Fed. Reg. 67,838 (Nov. 3, 2015) (2015 Rule). "The final rule [was to be considered] effective on January 4, 2016." *Id*. at 67,838.

EPA estimated that the 2015 Rule would produce between $451 and $566 million in annual benefits, *id*. at 67,838, and prevent approximately 1.4 billion pounds of pollutants – including both toxic and bioaccumulative metals such as mercury, arsenic, cadmium, chromium, and selenium – from being discharged into our nation's waterways

4

every year.[1] *Id*. at 67,839-41. Numerous parties, including UWAG, challenged the 2015 Rule. Fed. Defs.' Mot. at 4; *Southwestern Electric Power Co. v. EPA*, No. 15-60821 (5th Cir. Dec. 9, 2015). The Center did not file a challenge to the 2015 Rule, and is not a party to those proceedings.

On March 24, 2017, while litigation was still ongoing around the 2015 Rule, UWAG filed an administrative citizen petition with EPA, requesting that the Agency "reconsider" the 2015 Rule and initiate a new rulemaking. 82 Fed. Reg. at 43,495. On April 5, 2017, the Advocacy Office of the U.S. Small Business Administration filed a similar petition. *Id*.

On April 12, 2017, EPA sent a letter to UWAG accepting its citizen petition. *Id*. On April 25, 2017, prior to any public notice and comment, EPA published a notice in the Federal Register announcing a "postponement of the compliance dates that have not yet passed" in the 2015 Rule. 82 Fed. Reg. 19,005, 19,006 (Apr. 25, 2017). The notice cited as authority for the stay Section 705 of the APA, 5 U.S.C. § 705. *Id*.

On August 11, 2017, EPA sent an additional letter to UWAG informing it that the Agency would undertake a rulemaking to reconsider two of the six primary waste streams

---

[1] According to EPA, power plants as an industry discharge more toxic water pollution than any other industrial point source category in the United States. 80 Fed. Reg. at 67,838. "[T]hese discharges account for about 30 percent of all toxic pollutants discharged into surface waters by all industrial categories regulated under the [Clean Water Act]," and when released into waterways are known to impair surface waters and harm native species, including by causing deformities and reproductive harm to fish and other wildlife. *Id*. at 67,839-40; *see also id*. at 67,873-74. They have also been known to contaminate drinking water and have been associated with a host of public health risks. *Id*. at 67,872-74. Once in the environment, many of these toxic pollutants will persist for years. *Id*. at 67, 838, 67,840.

at power plants: bottom ash transport water and flue gas desulfurization wastewater. 82 Fed. Reg. at 43,495. On September 18, 2017, after a brief notice and comment period, EPA published an additional notice in the Federal Register, withdrawing its April 25 notice and putting in its place a two-year delay of compliance deadlines for the waste streams identified in the Agency's August 11, 2017 letter. 82 Fed. Reg. 43,494 (Sept. 18, 2017). The two-year delay became effective immediately upon publication. *Id*. at 43,499.

## ARGUMENT

### I.   *Section 509 of the Clean Water Act Applies Only to Actions Approving or Promulgating an "Effluent Limitation or Other Limitation"*

EPA relies on Section 509(b)(1)(E) of the Clean Water Act, 33 U.S.C. § 1369(b)(1)(E), to support its contention that this Court lacks jurisdiction over Plaintiff's claims. *See* Fed. Defs.' Mot. at 1, 7-8. EPA's dependence on Section 509(b)(1)(E) is misplaced because the Delay Rule does not approve or promulgate any "effluent limitation or other limitation" – a strictly held requirement of Section 509(b)(1)(E), and because Section 509(b)(1)(E) does not provide exclusive jurisdiction to the court of appeals to review an action that delays the compliance date of a rule already in effect.

The "beginning point" of this analysis "must be the language of the statute." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992). Section 509(b)(1) "enumerates seven categories of EPA actions that must be challenged directly in the federal courts of appeals." *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 628. Of those seven categories, subparagraph (E) is the only category that EPA alleges is at issue in this case. Fed. Defs.' Mot. at 8.

Section 509(b)(1)(E) of the Clean Water Act, a provision often referred to as the Act's "direct review provision," provides in relevant part:

> Review of the Administrator's action . . . in approving or promulgating any effluent limitation or other limitation under section 301, 302, 306, or 405 . . . may be had by any interested person in the Circuit Court of Appeals of the United States . . . .

33 U.S.C. § 1369(b)(1)(E). The Act defines "effluent limitation" as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters." 33 U.S.C. § 1362(11); *see also* 40 C.F.R. § 122.2.

Beyond the seven categories specifically identified in Section 509(b)(1), the Clean Water Act does not include any additional or supplementary "catch all" provision that would route the review of more generalized agency actions – such as the delay of a compliance date – to the court of appeals. *Compare* Clean Air Act, 42 U.S.C. § 7607(b)(1) (providing that petitions for review of "any other final action" taken by EPA under the Clean Air Act must be filed in the court of appeals) *with* Clean Water Act, 33 U.S.C. § 1369(b)(1) (lacking such a provision). Thus, for agency actions that are not subject to the Clean Water Act's direct review provision, jurisdiction is proper in the district court. *See Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 624.

As the Supreme Court recently explained in *National Association of Manufacturers v. U.S. Department of Defense*, Section 509(b)(1)(E) is narrow and explicitly encompasses only EPA actions approving or promulgating effluent limitations or other limitations. 138 S. Ct. at 628-631. In that case, the Court considered whether the

court of appeals or district courts had jurisdiction to review EPA's Waters of the United States Rule – a rule that defined the term "waters of the United States" under the Clean Water Act. *Id.* at 624; *see also* 80 Fed. Reg. 37,054 (June 29, 215). In so doing, the Court interpreted the plain language of Section 509(b)(1)(E), ultimately finding that plaintiffs' challenge fell outside the scope of Section 509(b)(1)(E), and, therefore, that any challenges to the rule should properly be reviewed by the federal district court. *Id.*

In arriving at that conclusion, the Supreme Court made a few fundamental determinations. First, while the Clean Water Act provides no explicit definition for "other limitation," the Court established that the "text and structure" of Section 509(b)(1)(E) "suggests that an 'other limitation' must be similar in kind to an 'effluent limitation': that is, a limitation related to the discharge of pollutants," with the unifying feature being the imposition of "restrictions on the discharge of certain pollutants." *Id*. at 628-29; *see also* 33 U.S.C. § 1362(11) (definition of effluent limitation). Similarly here, the Delay Rule does not impose any restriction on the discharge of pollution; instead, the opposite is true: the Delay Rule "*relieves* a restriction on regulated entities." 82 Fed. Reg. at 43,499 (emphasis added). The elimination of a restriction is clearly not the type of agency action intended to be included in the definition of "effluent limitation" or "other limitation," or within the scope of Section 509(b)(1)(E).

Next, the Supreme Court determined that the use of the word "any" in subsection (E) (*i.e.* "*any* effluent limitation or other limitation") does not connote a broad reading of that statutory section. *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 629. Rather, "any" in the context of the section "cannot expand the phrase 'other limitation' beyond those limitations that,

like effluent limitations, restrict the discharge of pollutants." *Id*. The Court established

that "urging otherwise" would "read[] the words 'effluent limitation and other'

completely out of the statute," a "rewrite" that is not permitted under the constitutional

structure of the judiciary. *Id* (citation omitted). The same reasoning applies here because

reading a separate administrative delay action into the language of Section 509(b)(1)(E)

would serve to "rewrite" and expand the applicability of that section, which would

unlawfully enlarge the bounds of Section 509.

      The Supreme Court then determined that 33 U.S.C. § 1361(a), which grants the

Administrator of the EPA general "authority . . . 'to prescribe . . . regulations,'" is not

captured within the language of Section 509(b)(1)(E). *Id*. at 630 (quoting 33 U.S.C. §

1361(a)). Comparably here, if EPA is relying on its "inherent authority" under 33 U.S.C.

§ 1361(a) as support for the Delay Rule, *see* 82 Fed. Reg. at 43,496, that is not sufficient

to bring this action into the terms of Section 509(b)(1)(E).

      The Supreme Court additionally rejected EPA's attempt to read a "practical-

effects" test into Section 509(b)(1)(E), finding that any such interpretation would not be

grounded in the statutory text because applying a "practical-effects" test would, in effect,

"ignore[] Congress' decision to grant appellate courts exclusive jurisdiction *only* over

seven enumerated" actions. *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 631 (emphasis added); *see

also id*. at 631-32 (rejecting a similar "functional interpretive approach" in applying

Section 509(b)(1)(F)). Yet again, the same logic applies to EPA's current efforts to

shoehorn a delay action into the outline of an effluent limitation by wrongly claiming that

the delay itself – which eliminates restrictions – can be an "effluent limitation or other

1   limitation" – which establish restrictions.

2        Ninth Circuit precedent further reinforces the Supreme Court's decision, advising

3   that given the confined language of Section 509(b)(1) and the "peculiar sting" of its

4   application, *Longview Fibre Co. v. Rasmussen*, 980 F.2d at 1313, courts should

5   "'counsel[ ] against [its] expansive application.'" *Nw. Envtl. Advocates v. EPA*, 537 F.3d

6   1006, 1015 (9th Cir. 2008) (quoting *League of Wilderness Defs. / Blue Mts. Biodiversity*

7   *Project v. Forsgren*, 309 F.3d 1181, 1190 n. 8 (9th Cir. 2002)); *see also Longview Fibre*

8   *Co. v. Rasmussen*, 980 F.2d at 1313 ("'If Congress had so intended, it could have simply

9   provided that all EPA action under the statue would be subject to review in the courts of

10  appeals, rather than specifying particular actions and leaving out others.'" (quoting

11  *Bethlehem Steel Corp. v. EPA*, 538 F.2d 513, 517 (2d Cir. 1976))); *Our Children's Earth*

12  *Found. v. EPA*, 527 F.3d 842, 846-47 (9th Cir. 2008) (finding that the district court did

13  not abuse its discretion in declining to transfer claims to the appellate court under Section

14  509(b)(1)); *ONRC Action v. United States Bureau of Reclamation*, No. 97-3090, 2012

15  U.S. Dist. LEXIS 118153, at *73-78 (D.Or. Jan. 17, 2012) (adopting and applying the

16  analysis in *NW Environmental Advocates*).

17        This case must be evaluated under that same framework.[2] *See, e.g., Blue Water*

18  *Balt., Inc. v. Pruitt*, No. GLR-17-1253, 2018 U.S. Dist. LEXIS 18456, at *9-12 (D. Md.

19  _____

20  [2] In its reply brief, EPA may try to analogize this case to *Clean Water Action v. Pruitt*,
    No. 17-0817, 2018 U.S. Dist. LEXIS 64852 (D.D.C. Apr. 18, 2018). That case – which
    has a different procedural posture and claims than are on review in front of this Court –

21  was essentially decided narrowly based on the court's denial of plaintiffs' motion for
    leave to amend or supplement their complaint. *Id*. at *23-24. There, the question of

22  jurisdiction was considered not on a motion to dismiss, but within the court's analysis on

10

Feb. 5, 2018) (applying *National Association of Manufacturers* and finding jurisdiction in the district court to be proper based the Supreme Court's interpretation of Section 509(b)(1)). Yet, in its motion to dismiss EPA fails to articulate why the Clean Water Act's direct review provision should be construed in any way other than its plain language. The closest EPA comes to touching on the idea that the Delay Rule must approve or promulgate an effluent limitation or other limitation to fit within the confines of Section 509(b)(1)(E) is to nonsensically claim that because Plaintiff's Complaint details the harm to the environment, imperiled wildlife, and public health that will occur because of EPA's action, that the Delay Rule itself must promulgate an effluent limitation. Fed. Defs.' Mot. at 7-8. But harm as the result of a wrongful delay does not create an effluent limitation or other limitation; instead, it stands in direct conflict with the definitions for those terms.

---

plaintiffs' motion to amend or supplement. *Id* at \*13. It was only after denying plaintiffs' motion to amend or supplement that the D.C. District Court dismissed the case on mootness grounds, finding that no live controversy continued to exist because plaintiffs were unable to properly challenge the Delay Rule (a limitation not before the Court in this case). *Id*. at \*24, 28. Further, in its analysis, the *Clean Water Action* court relied on an expansive interpretation of Section 509(b)(1) of the Clean Water Act that is contrary to *National Association of Manufacturers*. For example, the court there adopted EPA's policy argument that it would be inefficient to construe the language of Section 509(b)(1) narrowly because it may create a bifurcated judicial review scheme. *Id*. at \*15. However, the Supreme Court expressly rejected that argument in *National Association of Manufacturers,* concluding that the plain language set out by Congress in the Clean Water Act must control. 138 S. Ct. at 632-33. The court's remaining analysis in *Clean Water Action* continues to run afoul of both the Supreme Court's recent decision in *National Association of Manufacturers* and decades of Ninth Circuit precedent – all of which caution that a narrow reading of Section 509 is appropriate given the plain language of that statutory section. The jurisdictional analysis in *Clean Water Action* is also largely dicta and is not binding on this Court.

1    Indeed, the dissonance of EPA's action in delaying compliance with the 2015 Rule

2  is especially glaring when held up against the purpose of the Clean Water Act. Congress

3  enacted the Clean Water Act in 1972 "to restore and maintain the chemical, physical, and

4  biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The "national goal" set

5  by Congress in passing the Act was to see the "discharge of pollutants into the navigable

6  waters . . . eliminated." *Id.* § 1251(a)(1). And it is those fundamental premises that are

7  imbued throughout the Act. *See, e.g., id.* § 1311(establishing effluent limitations). EPA's

8  Delay Rule, on the other hand, does not even purport to limit the discharge of pollution

9  into waterways, let alone support the Act's central purpose.

10    EPA is not entitled to – and should not be granted – deference on its interpretation

11  of a statute that defines the jurisdiction of the Court. *Our Children's Earth Found.*, 527

12  F.3d at 846 n. 3; *Friends of the Everglades v. EPA*, 699 F.3d 1280, 1285 (11th Cir. 2012).

13  In light of the plain language of the Section 509(b)(1)(E), Supreme Court precedent, and

14  this Circuit's own precedent, therefore, review of the Delay Rule is appropriate in the

15  district court.

16
17  **II.    *EPA's Delay Rule Is an Independent Final Agency Action under the APA that is Separate from the 2015 Rule***

18    EPA attempts to get around Section 509(b)(1)(E)'s threshold requirements by

19  claiming that the Delay Rule is an amendment to the 2015 Rule and, therefore, that the

20  Delay Rule itself is an effluent limitation subject to challenge in the circuit court. *See*

21  Fed. Defs.' Mot. at 7-9. This argument is predicated on the incorrect notion that the rule

22  challenged by the Center here is merely an extension of that earlier rulemaking, rather

1    than a final agency action in its own right that is subject to its own judicial review.

2    However, the details, timing, and procedure undertaken by EPA in finalizing the Delay

3    Rule, as well as settled legal principles, clearly distinguish the Delay Rule as an

4    independent final agency action subject to review in the district court.

5
6
### 1. The Delay Rule is not, nor could it be, part of the 2015 Rulemaking Process

7    EPA's assertion that the Delay Rule "*amends* the 2015 ELG Rule and therefore

8    constitutes an ELG Rule itself" is unmoored from the Clean Water Act and the agency's

9    own administrative process. Fed. Defs.' Mot. at 8 (emphasis in original). First, EPA's

10   position is inconsistent with the Clean Water Act because Congress did not grant EPA the

11   authority to postpone or delay effluent limitations once they have been established, even

12   for the purposes of reconsideration. 33 U.S.C. § 1311(b)(2) (providing that "compliance

13   with effluent limitations" such as those promulgated in the 2015 Rule, must be achieved

14   "as expeditiously as practicable but in no case later than three years after the date such

15   limitations are promulgated"); *see also* 83 Fed. Reg. 5,200, 5,203 (Feb. 6, 2018) (as EPA

16   describes in a separate rulemaking, "Congress is very clear in the Clean Water Act . . .

17   when it requires a rule to be in effect by a specific time after promulgation," and 33

18   U.S.C. § 1311(b) is an example of where Congress has been clear that the Act requires

19   compliance with "effluent limitation guidelines no later than three years after they are

20   established.").

21   This is meaningful because Congress expressly granted such authority to EPA

22   under other federal environmental laws. *Compare* Clean Air Act, 42 U.S.C. §

13

7607(d)(7)(B) ("The effectiveness of the rule may be stayed during such reconsideration . . . by the Administrator or the court for a period not to exceed three months") *with* Clean Water Act, 33 U.S.C. § 1311(b)(2) (lacking such a provision). As the Supreme Court has reiterated on numerous occasions, "[w]e normally presume that, where words differ as they differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Instead, the Act requires that any "[r]eview and revision of effluent limitations" be conducted "pursuant to the procedure established" in the statute. 33 U.S.C. § 1311(d). Those procedures, which include a multi-factor statutory analysis, were not followed in issuing the Delay Rule. *See id*. § 1314(b)(2)(B) (describing the factors EPA "shall take into account" in adopting or revising effluent limitation guidelines under the Act); *see also id*. §§ 1311 (b), (d). Indeed, the Delay Rule manifestly should not be considered to amendment the effluent limitations established through the 2015 Rule because it *"does not . . .* amend the effluent limitations guidelines and standards for the steam electric power generating point source category." 82 Fed. Reg. at 43,495 (emphasis added); *see also id*. at 43,496 (responding to public comments by saying, "comments on the substantive requirements of the 2015 Rule . . . are outside the scope of this action, which concerns postponing certain compliance dates only . . .").

EPA next attempts to rely on *Nat. Res. Def. Council v. Abraham* for the principle that "altering the effective date of a duly promulgated standard could be, in substance, tantamount to an amendment or rescission of the standards." Fed. Defs.' Mot. at 8-9

14

(quoting *Nat. Res. Def. Council v. Abraham,* 355 F.3d 179, 194 (2d Cir. 2004) (*Nat. Res. Def. Council*). But EPA's motion fails to provide this Court with the proper statutory context for that decision, which predates the Supreme Court's recent holding in *National Association of Manufacturers*.

First and importantly,  *Nat. Res. Def. Council* concentrated on the direct review provision contained in the Energy Policy and Conservation Act (EPCA), not the Clean Water Act. In its analysis, the court established that the direct review provision in EPCA provides a "general grant of jurisdiction" that is so expansive that "most acts undertaken . . . under its grant of authority . . . are subject to review by the court of appeals." 355 F.2d at 193. In stark contrast, as discussed above (*supra* 7-10), the Supreme Court and this Circuit's precedent make clear that the Clean Water Act's direct review provision is to be construed narrowly, and cannot be interpreted to cover actions that are not specifically included therein. Thus, unambiguously, while the *Nat. Res. Def. Council* court determined that the general grant of authority under EPCA was within the expansive scope of the Act's direct appellate review provision, the Supreme Court in *National Association of Manufacturers* rejected that argument as to the Clean Water Act, finding that Section 509(b)(1) cannot be read so expansively.

The Second Circuit in *Nat. Res. Def. Council* also found that the delay rule there was important to the court's review because it simultaneously had in front of it the delay rule, the full withdrawal of the rule, and the replacement of the rule. *Id*. at 194. Here, while EPA has indicated that it may, at some point, initiate a future rulemaking related to developing a new set of effluent limitations and standards for power plants, such

15

speculative statements by an indecisive agency do not establish the basis for a jurisdictional dismissal. *See State of Cal. v. BLM*, 286 F.Supp.3d 1054,1064 (N.D. Cal. 2018) (finding that EPA's delay rule must be analyzed as "a discrete agency action separate from any proposed future revision"); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000) ("[T]hat a law may be altered in the future has nothing to do with whether it is subject to judicial review" presently.).

### 2. EPA's Delay Rule is an independent final agency action taken almost two years after the effective date of the 2015 Rule

The Delay Rule is a final agency action subject to judicial review, a point which is not disputed by EPA. *See* Fed. Defs.' Mot. at 6 ("On September 12, 2017, the Administrator issued a final rule postponing . . ."). Courts have consistently held that agency actions to delay or suspend the effective date of an already final rule are, themselves, independently reviewable final agency actions. *See, e.g.*, *State of Cal. v. BLM*, 286 F.Supp.3d at 1064 (finding the delay rule must be analyzed as "a discrete agency action"); *Pineros Y Campesinos Unidos v. Pruitt*, No. 17-03434, 2018 U.S. Dist. LEXIS 60524, at *9 (N.D. Cal. Mar. 21, 2018) (finding EPA's delay of the effective date of a rule to be substantive rulemaking that must comply with the requirements of the APA); *Sierra Club v. Jackson*, 813 F.Supp.2d 149, 162 (D.D.C. 2011) (holding that EPA's issuance of a delay notice under the APA is an action that is subject to judicial review in district court). Because the Delay Rule is a separate final agency action that does not establish or revise effluent limitations or other limitations, it is outside the narrow scope of Section 509(b)(1) and it is reviewable by this Court.

16

### III.     Plaintiff's Claims Under the ESA and NEPA Also Belong in the District Court

The question posed in EPA's second argument regarding which jurisdictional provision should apply in a situation where one subset of a claim provides for exclusive original jurisdiction in the court of appeals and another subset provides for a grant of jurisdiction in the district court, Fed. Defs.' Mot. at 9-11, is not a question that this Court must reach since, as established above (*supra* 6-16), the direct review provision of Section 509(b)(1)(E) does not apply to this case. There are no further competing provisions under the Clean Water Act, ESA, NEPA, or the APA that otherwise provide an exclusive grant of jurisdiction to the court of appeals, rather than in the district court. *See* 16 U.S.C. § 1540(g)(1) ("The district courts . . . have jurisdiction" over ESA citizen suits)[3]; *Bennett v. Spear*, 520 U.S. 154, 164-65 (determining that the ESA citizen suit provision creates "an authorization of remarkable breadth"); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (recognizing that in bringing a claim under NEPA, Plaintiffs rely on the judicial review provisions of the APA); 5 U.S.C. § 702 (Right of Review); 28 U.S.C. § 1331 (federal question jurisdiction).

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Federal Defendants' Motion to Dismiss for Lack of Jurisdiction.

---

[3] The ESA contains a broad "citizen suit" provision that authorizes "any person" to "commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this Act or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1).

1    Respectfully submitted this 3rd day of May, 2018.

2                                    /s/ *Hannah Connor*
                                     Hannah Connor (Florida Bar No. 125378)*

3                                    CENTER FOR BIOLOGICAL DIVERSITY
                                     P.O. Box 2155

4                                    St. Petersburg, FL 33731
                                     Phone: (202) 681-1676

5                                    Email: hconnor@biologicaldiversity.org

6                                    Robert Ukeiley (CO Bar No. 26747)*
                                     CENTER FOR BIOLOGICAL DIVERSITY

7                                    1536 Wynkoop St., Ste. 421
                                     Denver, CO 80202

8                                    Phone: (720) 496-8568
                                     email: rukeiley@biologicaldiversity.org

9
                                     Jennifer L. Loda (CA Bar No. 284889)*

10                                   CENTER FOR BIOLOGICAL DIVERSITY
                                     1212 Broadway, Ste 800

11                                   Oakland, CA  94612
                                     Phone: 510-844-7100 x336

12                                   Email: jloda@biologicaldiversity.org

13                                   * Admitted *pro hac vice*
                                       *Counsel for Plaintiff Center for Biological Diversity*

14

15

16

17

18

19

20

21

22

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on May 3, 2018, I filed the foregoing with the Court's electronic filing system, which will serve all counsel by electronic means.

3

4

*/s/ Hannah Connor*
Hannah Connor (Florida Bar No. 125378)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22