1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8
9

Center for Biological Diversity,

No. CV-18-00050-TUC-JAS

10

Plaintiff,

**ORDER**

11

v.

12

Andrew Wheeler, in his official capacity as Acting Administrator of the U.S. Environmental Protection Agency,[1] and U.S. Environmental Protection Agency,

13
14

Defendants,

15
16

and

Utility Water Act Group,

17
18

Intervenor-Defendants.

19
20

    Pending before the Court is Andrew Wheeler's and the U.S. Environmental

21

Protection Agency's (Federal Defendants) and the Utility Water Act Group's (UWAG)

22

motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of

23

Civil Procedure 12(b)(1). For the reasons stated below, the motions are granted.[2]

24

**I. STANDARD OF REVIEW**

25

    Pursuant to Rule 12(b)(1), a party may move to dismiss an action for lack of

26
27
28

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew Wheeler is automatically substituted in for E. Scott Pruitt (the former Administrator of the EPA initially named in the Complaint) as the current Acting Administrator of the EPA.

[2] Because the briefing is adequate and oral argument will not help in resolving this matter, oral argument is denied. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200-1201 (9th Cir. 1999).

subject matter jurisdiction. *See* Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion to dismiss may advance "facial attacks" or "factual attacks" on subject-matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendants' challenges to Plaintiff's Complaint are facial attacks, whereby "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in the complaint." *Id.* In reviewing a Rule 12(b)(1) motion to dismiss, a court will take all the allegations in the complaint as true, drawing all reasonable inferences in favor of the nonmoving party. *Id.*

## II. BACKGROUND

The objective of the Clean Water Act (CWA) is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA prohibits "the discharge of any pollutant by any person" except as in compliance with the Act. § 1311(a). One authorized exception to this prohibition is the National Pollutant Discharge Elimination System (NPDES), which is administered by the Environmental Protection Agency (EPA) under § 1342 of the CWA. Under the NPDES, the EPA may issue permits which authorize persons to discharge pollutants that may wash down stream, "upon condition that such discharge will meet . . . all applicable requirements under sections 1311, 1312, 1316, 1317, 1318, and 1343." §1342(a)(1). "NPDES permits impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 625, 199 L. Ed. 2d 501 (2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 174, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). Among the multiple limitations imposed by NPDES permits are effluent limitations, which the Act defines as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point

sources into" various waters. 33 U.S.C. 1362(11).

In 2015, the EPA promulgated a rule (2015 ELG Rule) which established new limits and standards, along with their associated compliance deadlines, for various types of wastestreams discharged by new and existing steam electric power plants; the EPA determined these limits and standards appropriate based on the Best Available Technology Economically Achievable (BAT). *See* 80 Fed. Reg. 67,838, 67,841 (Nov. 3, 2015). The Rule also imposed effluent limitations for "legacy wastewater"[3] which took effect immediately upon the Rule's promulgation. *Id.* at 67,854-55. The 2015 ELG Rule was subsequently challenged by various parties, and petitions for review were consolidated in the Fifth Circuit. *See Southwestern Electric Power Co. v. EPA*, No. 15-60821 (5th Cir. Dec. 8, 2015). In response, the EPA Administrator determined that it was appropriate and in the public interest to reconsider the Rule; the EPA further found that, under 5 U.S.C. § 705,  justice required it to stay the compliance dates of the Rule that had not yet passed, pending judicial review. 82 Fed. Reg. 19,005 (April 25, 2017) ("Indefinite Stay"). After undertaking reconsideration, on September 12, 2017, the Administrator issued a final rule (ELG Rule Amendment) which, amongst other things, postponed by two years certain compliance deadlines set forth in the 2015 ELG Rule. *See Id.* at 43,494. In so doing, the Administrator withdrew the Indefinite Stay *See Id.* at 43,496.

On January 30, 2018, Plaintiff filed its Complaint for Declaratory and Injunctive Relief with this Court. Plaintiff brought its claims as an Endangered Species Act (ESA) citizen suit, invoking jurisdiction under 28 U.S.C. § 1331 and 16 U.S.C. § 1540. Complaint at 1-2. Through its Complaint, Plaintiff challenged the ELG Rule Amendment, alleging violations of the ESA and the National Environmental Policy Act (NEPA). *Id.* On April 3, 2018, Federal Defendants filed a Motion to Dismiss, arguing that this Court lacks jurisdiction to review Plaintiff's claims because "under the CWA's judicial review provisions, *all* challenges to effluent limitations – no matter their statutory basis – must

---

[3] In this context, the term "legacy wastewater" refers to certain wastewaters generated after the Rule's promulgation but before the compliance deadlines had arrived. *See* 80 Fed. Reg. 67,854-55.

be brought in the court of appeals." *See* Motion to Dismiss at 1 (citing 33 U.S.C. 1369(b)(1)). Shortly thereafter, on April 6, 2018, Utility Water Act Group (UWAG) filed a Motion to Intervene, as well as a Proposed Motion to Dismiss for Lack of Subject-Matter Jurisdiction or, in the Alternative, for Transfer. *See* Dkt. 14, 15. This Court granted UWAG's Motion to Intervene on June 6, 2018, permitting UWAG to intervene in this action as an Intervenor-Defendant. *See Id.* at 26. This case has since been fully-briefed by all interested parties.

## III. DISCUSSION

This Court lacks jurisdiction to review Plaintiff's claim because it challenges an EPA action that is directly and exclusively reviewable in the federal courts of appeals. The Clean Water Act (CWA) enumerates seven categories of EPA actions that must be challenged directly in the federal courts of appeals. 33 U.S.C. § 1369(b)(1); *see also Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 623, 626, 628 (2018). The sole category relevant here, subparagraph (E), vests courts of appeals with exclusive jurisdiction to review any EPA actions "in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 [of the CWA]." § 1369(b)(1)(E); *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 628. The CWA defines "effluent limitation" as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into" various waters. §1362(11). Though not explicitly defined by the CWA, under § 1369(b)(1)(E) an "other limitation" must be a limitation related to the discharge of pollutants, such as "a non-numerical operational practice or an equipment specification that, like an 'effluent limitation,' restricts the discharge of pollutants, even though such a limitation would not fall within the precise statutory definition of 'effluent limitation.'" *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 628-29.

As a preliminary matter, the parties do not dispute that the 2015 ELG Rule (80 Fed. Reg. 67,838) promulgated effluent limitations within the meaning of § 1369(b)(1)(E). *See, e.g.,* Complaint ¶¶ 32-33. The 2015 ELG Rule revised the effluent

limitation guidelines for new and existing steam electric power plants that discharge wastestreams containing toxic and other pollutants. 80 Fed. Reg. 67,841. Specifically, the Rule established effluent limitations for six wastestreams[4] based on the Best Available Technology Economically Achievable (BAT),[5] and stipulated compliance deadlines for these limitations, the earliest of them being November 1, 2018. *Id.* at 67,841-42. The Rule further established particularized effluent limitations for "legacy wastewater," which encompass wastewater that is generated after the Rule's effective date, but before the compliance deadlines come into effect. *Id.* at 67,854; *see also Clean Water Action v. Pruitt*, No. 17-0817, 2018 U.S. Dist. Lexis 64852 (D.D.C. Apr. 18, 2018).[6] Recognizing that the 2015 ELG Rule promulgated these multiple effluent limitations, thereby falling within the ambit of § 1369(b)(1), challengers of the Rule invoked jurisdiction under § 1369(b)(1) and properly filed their respective actions in federal courts of appeals; these actions were ultimately consolidated before the Fifth Circuit. *See Id.* at *14-15.

Plaintiff here, however, contends that the 2017 ELG Rule Amendment falls outside the ambit of § 1369(b)(1) because "it does not approve or promulgate any effluent limitation or other limitation, and does not change or otherwise amend the effluent limitations and guidelines," Pls. Opp. at 2, but instead "relieves a restriction on regulated entities" by delaying the compliance deadlines established by the 2015 Rule. *Id.* at 3. As

---

[4]   The six wastestreams are: fly ash transport water, bottom ash transport water, combustion residual leachate, flue gas desulfurization wastewater, flue gas mercury control wastewater, and gasification wastewater. *See* 80 Fed. Reg. at 67,841-42.
[5] "BAT is based on technological availability, economic achievability, and other statutory factors and is intended to reflect the highest performance in the industry." *Id.* at 67,841.
[6] This Court considered Plaintiff's argument against the applicability of the D.C. District Court's recent holding in *Clean Water Action*. Pls. Opp. at 10-11, n.2. Plaintiff is correct in asserting that the court in *Clean Water Action* technically addressed a different legal question – whether to grant a motion to amend the complaint – than the one before this Court here – whether to grant a motion to dismiss for lack of subject matter jurisdiction. However, this Court agrees with Federal Defendants' argument that the D.C. court nonetheless "performed the same inquiry – whether 'plaintiffs' proposed claims' challenging the ELG Amendment Rule 'are futile *because this Court lacks jurisdiction to review them*' under Section 1369(b)(1)(E)." Def. Rep. at 1, n. 2 (quoting *Clean Water Action*, 2018 LEXIS 64852, at *5) (emphasis added). Accordingly, this Court considered the jurisdictional analysis in *Clean Water Action* and found it to be both highly relevant and persuasive authority; this Court agrees with the reasoning of the *Clean Water Action* court in finding that only federal courts of appeals have jurisdiction over the dispute at bar. *See Clean Water Action*, 2018 LEXIS 64852, at *13-20.

discussed below, this Court finds Plaintiff's arguments unconvincing as the Amendment promulgates effluent limitations or other limitations such that jurisdiction rests solely with the federal courts of appeals.

First, the Amendment promulgates "limitation[s] related to the discharge of pollutants" for five wastestreams in the steam electric power plant industry. *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 628. The 2015 ELG Rule established effluent limitations and standards, with corresponding compliance deadlines, for six wastestreams. 80 Fed. Reg. at 67,841-42. In April of 2017, the EPA indefinitely stayed compliance deadlines for five of these wastestreams pending judicial review. 82 Fed. Reg. at 19,005-06. As a result of this intervening Stay, when the EPA subsequently promulgated the 2017 ELG Rule Amendment, "much of the ELG Rule was not in effect; rather, the Stay had *indefinitely* postponed compliance for five wastestreams. Thus, under the status quo immediately preceding the Amendment, five wastestreams were not at all subject to 'existing restrictions' established by the ELG Rule. The Amendment, by withdrawing the Indefinite Stay, limits effluents compared to the status quo ante." *Clean Water Action*, 2018 LEXIS 64852, at *16. The Amendment imposes the same limits and standards, along with their associated compliance deadlines, as the ELG Rule for three wastestreams (flue gas mercury control wastewater, fly ash transport water, and gasification wastewater), and retains the same limits and standards while setting new compliance deadlines for two wastestreams (bottom ash transport water and flue gas desulfurization wastewater).[8] *See* 82 Fed. Reg. at 43,494-96; 43,498-99; 43,500. Because the intervening Stay changed the status quo ante, the Amendment thus establishes restrictions on the discharge of pollutants for these five wastestreams "that were not in effect on the day before the Amendment." *See Clean Water Action*, 2018 LEXIS 64852, at *17.

Second, the Amendment promulgates effluent limitations or other limitations by

---

[8] The 2015 ELG Rule further required that "steam electric power plants would comply with the new, more stringent requirements no later than 2023, with plants expected to implement new control technologies over a five-year compliance period of 2019-2023 according to their permit renewal schedule." 82 Fed. Reg. at 43,497. The Stay removed this requirement, pending judicial review, *id.* at 19,005, and the ELG Rule Amendment re-imposed it. *Id.* at 43,496-97.

substantively revising the 2015 ELG Rule. As stated above, the Amendment establishes new earliest compliance deadlines for two wastestreams (bottom ash transport water and flue gas desulfurization wastewater) and changes the limitations and standards that will apply up until those new compliance dates. 82 Fed. Reg. at 43,496. Under the 2015 ELG Rule, the earliest compliance deadlines for these two wastestreams were set as November 1, 2018; before that date arrived, the rule would impose "legacy wastewater" limits. 80 Fed. Reg. at 67,854. The Amendment revised the ELG Rule by changing the earliest compliance deadlines for these wastestreams to November 1, 2020, and by extending the imposition of "legacy wastewater" limits up until this new date. 82 Fed. Reg. at 43,500. In short, the 2015 ELG Rule and the ELG Rule Amendment each impose distinct limits and standards that would apply to these two wastestreams between November 1, 2018, and November 1, 2020: under the ELG Rule, the new, more stringent limitations and standards would apply during this period, whereas under the ELG Rule Amendment, the "legacy wastewater" limits would continue to apply.[9] By substantively revising the relevant compliance deadlines and applicable standards set forth in the ELG Rule, the ELG Rule Amendment thus approves or promulgates different limitations related to the discharge of pollutants during this period.[10]

Plaintiff, perhaps unwittingly, acknowledged this in its notice of intent to sue, in which it states: "By delaying implementation of vital portions of the 2015 ELGs for two years, *thereby authorizing these pollutant discharges to continue*, the newly issued ELG

---

[9] The Court notes that the ELG Rule Amendment imposes substantive limitations during this two-year period ("legacy wastewater" limitations), rather than providing "no limitation whatsoever." *See Nw. Envtl. Advocates v. EPA,* 537 F.3d 1006, 1016 (9th Cir. 2008). The ELG Rule Amendment does not simply exempt these two wastestreams from any limitations whatsoever; instead, it changes the relevant types of limitations and standards which will apply to these wastestreams during this period. 82 Fed. Reg. at 43,496.

[10] In *Clean Water Action*, the D.C. District Court provides a fitting example demonstrating the effect of such a change in a comparable scenario: "To illustrate, consider a road with a speed limit of forty miles per hour. Changing the road's speed limit sets a new speed limit, and the analysis is no different if the change only affects future compliance deadlines. If a rule (like the ELG Rule) sets twenty miles per hour as a new speed limit that will apply on the road starting in late 2018, and a later rule (like ELG Rule Amendment) revises the compliance deadline to 2020, the later rule sets a different speed limit on that road for the period from late 2018 to 2020: forty miles per hour instead of twenty miles per hour." *Clean Water Action*, 2018 LEXIS 64852, at *18.

1    Delay Rule has caused the very adverse environmental impacts that warranted the 2015

2    ELGs…" Exhibit 1 at 2, incorporated into the Complaint at ¶ 4 (emphasis added).

3    Plaintiff later backpedaled to state that Federal Defendant EPA lacked "authority to

4    postpone or delay effluent limitations once they have been established, even for the

5    purposes of reconsideration." Pls. Opp. at 13, citing 33 U.S.C. § 1311(b). Section 1311(d)

6    of the CWA requires that any "[r]eview and revision of effluent limitations" be

7    conducted "pursuant to the procedure established" in the statute. *Id.* at 1311(d). Plaintiff

8    argues that those procedures, including the multi-factor statutory analysis listed in §

9    1314(b)(2)(B) of the CWA, were not followed in issuing the ELG Rule Amendment. Pls.

10   Opp. at 14. Similar to the plaintiffs in *Clean Water Action*, Plaintiff here essentially

11   contends that the EPA failed to follow the "effluent limitation guidelines" when

12   promulgating the ELG Rule Amendment, while simultaneously asserting – for

13   jurisdictional purposes – that EPA did not promulgate or approve any "effluent limitation

14   or other limitation" when it published the ELG Rule Amendment. *See Clean Water

15   Action*, 2018 LEXIS 64852, at *19. Like the court in *Clean Water Action*, this Court finds

16   that the ELG Rule Amendment "approv[es] or promulgat[es] effluent limitation[s] or

17   other limitations[s]." 33 U.S.C. § 1369(b)(1)(E).[11]

18       Third, the limitations prescribed by the ELG Rule Amendment were "approv[ed]

19   or promulgat[ed]… under section 1311, 1312, 1316, or 1345," thereby meeting the

20   criteria set forth in § 1369(b)(1)(E). "With respect to subparagraph (E), the statutory

21   context makes clear that the prepositional phrase—'under section 1311'—is most

---

22   [11] The Court notes Plaintiff's reliance on *Nat'l Ass'n of Mfrs.* in arguing that § 1369(b)(1)

23   is to be construed narrowly, "and explicitly encompasses only EPA actions approving or
     promulgating effluent limitations or other limitations." Pls. Opp. at 7, citing *Nat'l Ass'n of

24   Mfrs.*, 138 S. Ct. at 628-31. In *Nat'l Ass'n of Mfrs*, the Court held that the Waters of the
     United States Rule, which defined the geographic scope of "waters of the United States"

25   for purposes of the CWA, did not fall within the ambit of § 1369(b)(1)(E) because the
     Rule merely "announces a regulatory  definition for a statutory term, but "does not

26   establish any regulatory requirements" and 'imposes no enforceable duty on any state,
     local, or tribal governments, or the private sector.'" *Id.* at 626, 628 (quoting 80 Fed. Reg.

27   37,054, 37,102). Conversely, the ELG Rule Amendment establishes multiple regulatory
     requirements and enforceable duties, namely those limitations discussed above.

28   Recognizing that the ELG Rule Amendment "impose[s] restrictions on the discharge of
     certain pollutants," this Court concludes that the Amendment falls within the narrow
     ambit of Section 1369(b)(1)(E). *Id.* at 629.

naturally read to mean that the effluent limitation or other limitation must be approved or promulgated 'pursuant to' or 'by reason of the authority of' §1311." *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 630. In advancing its argument that the Federal Defendants did not properly adhere to the relevant revision procedures in promulgating the ELG Rule Amendment, Pls. Opp. at 13-14, Plaintiff does not account for the critical portion of the Amendment where the EPA expressly invokes its congressional authority under the CWA to revise effluent limitations and standards, citing directly to 33 U.S.C. 1311(d) (which provides for EPA review and revision of standards) and § 1314(b) (which provides the multi-factor statutory analysis required for revising effluent limitations). 82 Fed. Reg. at 43,496. Therefore, this Court holds that the ELG Rule Amendment promulgates effluent or other limitations within the meaning of 1369(b)(1)(E), and thus may be challenged directly and exclusively in the federal courts of appeals.

**<u>CONCLUSION</u>**

In light of the foregoing, IT IS HEREBY ORDERED as follows:

(1) The Federal Defendants' and the UWAG's motions to dismiss are granted.

(2) This case is dismissed.

(3) The Clerk of the Court shall enter judgment and close the file in this case.

Dated this 29th day of October, 2018.

Honorable James A. Soto
United States District Judge